IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TASHA LASHAUN WILSON, | § | |
| Movant, | § | |
| | § | |
| v. | § | No. 3:19-cv-927-M (BT) |
| | § | No. 3:15-cr-298-M (BT) |
| UNITED STATES of AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Tasha Lashaun Wilson filed a *pro se* motion to vacate, set-aside, or correct her sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should deny the motion.

**I. Procedural and Factual Background**

A.

In 2015, Wilson pleaded guilty, pursuant to a plea agreement, to an information charging her with theft of government money in violation of 18 U.S.C. § 1641. The District Court sentenced her to twelve months and one day in prison and two years of supervised release. The Fifth Circuit subsequently affirmed her conviction and sentence. *United States v. Wilson*, 719 F. App'x 436 (5th Cir. 2018) (per curiam). She was released from prison on May 11,

1

2018, and is currently serving her term of supervised release. (*See* ECF No. 13 at 4 n.2.)

On April 16, 2019, Wilson filed her § 2255 motion in which she claims: (1) her guilty plea was involuntary because she received ineffective assistance of counsel; (2) her confession was coerced; (3) the Government failed to disclose favorable evidence; and (4) she has new evidence that she is actually innocent. The Government filed a response, arguing Wilson's claims are waived, procedurally defaulted, and meritless, and she fails to prove that she received ineffective assistance of counsel. Wilson filed a reply. The motion is thus fully-briefed and ripe for determination.

B.

Wilson received rental assistance through the U.S. Department of Housing and Urban Development's (HUD) Housing Choice Voucher (HCV) program. (PSR ¶ 8.) An individual who participates in the HCV program can use the voucher to rent a residence with any HUD-approved landlord. (PSR ¶ 8.) HUD, by way of the voucher, subsidizes the HCV tenant's rent by paying some or all of the tenant's rent directly to the landlord. (PSR ¶ 8.) This money does not go to the tenant but is paid directly to the landlord. (PSR ¶ 8.) The tenant must undergo an annual recertification process and report any changes in his or her family composition, income, or assets. (PSR ¶ 10, 14.)

2

HUD determines and adjusts the amount of money it sends as a rent subsidy to the tenant's landlord based on the tenant's reported income and assets. (PSR ¶¶ 9, 14.)

Several steps are required for a rental property to be approved for an HCV tenant and for the landlord to receive rental payments from HUD. (PSR ¶¶ 9-22.) One is the landlord's submission of bank account information for direct deposit of the HUD voucher payment. (PSR ¶ 13.) There is also a certification that the tenant does not have a financial interest in the property, is not the landlord's family member, and that the landlord does not live with the tenant. (PSR ¶¶ 11, 14-15.)

Wilson had received assistance from the HCV program since 2003. (PSR ¶ 12.) In September 2010, Wilson applied to have her voucher moved to a property owned by her boyfriend Orlando Marshall. (PSR ¶¶ 11-12, 20.) Wilson and Marshall shared a joint bank account. (PSR ¶ 16.) As a part of his application to be a landlord, Marshall submitted a direct deposit form to HUD listing the joint bank account that Marshall and Wilson shared as the account into which HUD should deposit the HUD funds. (PSR ¶ 21.) The direct deposit form included only Marshall's name and did not disclose that Wilson was also on the account. (PSR ¶¶ 18, 21.)

Wilson knew that HUD did not know that she had access to this joint account. (PSR ¶ 19.) Wilson used the HUD money deposited into the account to make purchases and also transferred money from the joint account into her individual bank account. (PSR ¶ 18.) Wilson never disclosed to HUD that she had access to the joint account or that she was receiving and spending money that HUD had deposited into the joint account. (PSR ¶ 18-19.)

## II. Legal Standards and Analysis

### A.

Wilson claims her guilty plea was involuntary because she received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, a movant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive the movant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a movant must prove prejudice. To prove such prejudice, the movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

When a movant argues her guilty plea was not voluntary due to the ineffective assistance of counsel, she must show that her counsel's advice to plead guilty fell below the range of competence demanded of an attorney in a criminal case. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Further, she must show prejudice by establishing "but for [her] counsel's alleged erroneous advice, [she] would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206.

Wilson argues she received ineffective assistance of counsel which rendered her guilty plea involuntary. A defendant's guilty plea must be made voluntarily, and the defendant must "make related waivers knowing[ly],

intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A determination of whether a defendant understands the consequences of her guilty plea, however, does not require a trial court to determine that the defendant has a perfect understanding of the consequences. The court must only ascertain whether the defendant has a realistic or reasonable understanding of her plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993).

Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of the guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). Further, "[w]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed." *United States v. McKinney*,

6

406 F.3d 744, 746 (5th Cir. 2005) (*quoting United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)).

Here, the District Court originally appointed Brian O'Shea as Wilson's defense counsel. After her guilty plea, Wilson asked O'Shea to withdraw her plea. O'Shea filed a motion to withdraw the plea, which the Court denied. O'Shea then withdrew as counsel, and the Court appointed Sharita Blacknall as Wilson's counsel. Wilson asked Blacknall to file a second motion to withdraw her guilty plea. Blacknall filed the motion, arguing Wilson did not knowingly and voluntarily enter her guilty plea. The Court again denied the motion.

In her current claim challenging the voluntariness of her plea, Wilson relies on the same arguments she raised in her second motion to withdraw her guilty plea. In her motion to withdraw her plea, she stated:

> Defendant maintains that her plea of guilty was involuntary and she felt coerced and intimidated despite (sic) she informed her previous defense counsel of her innocence in which she was advised that she will receive a harsher sentence. She maintains she is innocent of the above charges. *See United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991) (noting that upon consideration of the totality of the circumstances, a defendant's plea may be withdrawn based upon a claim of "innocence" or if the plea was involuntary).

\* \* \*

> Defendant contends her prior Defense Counsel, Brian O'Shea, was incompetent and ineffective to properly give her legal advice

7

because of a conflict of interest. The Defendant contends she met the Defense Counsel, at his Office for a free consultation after she received a "Target Letter" suggesting she obtain legal representation. The Defendant explained to her soon to be Defense Counsel her situation and expressed her innocence of any wrong doing. She felt comfortable with him because he seemed to have listened and understood her situation. The Defendant asked how much would it cost for him to represent her, and Defense Counsel informed her it was $25,000 and she expressed to him she could not afford that fee. As they continued to talk the Defense Counsel informed her, he was also registered as Public Defender, and she requested if he could represent her, and Defense Counsel submitted a request to do so. In the second meeting, May 12, 2015 the first after he was assigned as the Defense Counsel, he presented the Defendant with the charges the Government was accusing her of and the sentencing guidelines. The Defendant expressed her innocence and the defense counsel advised her that it will be hard to prove her innocence with the said evidence. Defendant asked her then Defense Counsel "what are my options." He stated "you can go to trial to prove your innocence but if you lose, the punishment will be worse than what you're already facing." He also mentioned the Government may offer a plea deal if you assume responsibility which will take off points. Defense counsel stated he will consult with the Prosecuting Attorney and ended the meeting.

The next time the Defendant heard from her Defense Counsel was via phone to inform her of the plea that the Government was willing to give her if she didn't go to trial. The Defendant was in shock and taken by surprise because she believed the Defense Counsel according to the "Target Letter, was going to set up a meeting between the Government, himself, and her and she would be shown evidence of some wrong doing. Defendant contends that instead, the Defendant was sent a plea deal and asked to review it without ever being shown any wrong doing and/or her Defense Counsel explaining to her the strength and weakness of the case, so she can properly decide if taking the plea or going to trial was in her best interest. The Defendant expressed her innocence to her Defense Counsel.

The next time Defendant heard from Defense Counsel was via phone where he advised Defendant that "she needs to figure out what she wants to do because the Government is ready to Indict her. She requested if she could just pay the Defense Counsel for his services, believing because she didn't pay him he wasn't representing her as if she was a paying client. The Defense Counsel replied, "I wouldn't even take your money because there is nothing I can do to help you." He suggested that she think about the Plea, despite not providing her with the adequate information to see what would truly be in her best interest. On July 7 the Defendant met with Mr. Oshea (sic) and the Government to review and sign the plea, despite expressing her innocence and not ever being shown any written rules, regulations, or policies that she violated, she was scared and felt like her Defense Counsel coerced her into signing by amplifying the possible outcome, without knowing if he and/or his staff ever investigated and/or verified any wrong doing on her part. Defendant contends she felt frustrated and confused and didn't fully understand the language her Defense Counsel used. Defendant contends she did not understand the charges until a friend explained them to her. Defendant contends she didn't understand the duties of her Defense Counsel.

\* \* \*

Defendant contends [a] text exchange shows the unprofessionalism and lack of empathy the previous Defense Counsel had for his client. Defendant contends instead of reassuring her by putting forth his best effort to satisfy her request, he instead decided to speak in support of the Government, informing her that what she was requesting wasn't optional and also what she was going through wasn't important to talk about and eventually informed her he was cutting off his phone. Defendant contends that when the Defendant stood before the courts, she was still scared and feeling like she was forced to accept the plea, not because she was admitting guilt of any wrong doing, but because she feared the lack and inability of her Defense Counsel to represent her if she went to trial. The Defendant felt like if her Defense Counsel wasn't willing to fight for her innocence during the plea stage, not because he told her

> this but because his actions showed he wasn't. Defendant contends she remained silent before the court.
>
> Defendant contends she eventually asked Brian O'Shea to file a Motion to Withdraw her guilty plea. . . .

(Crim. ECF No. 45 at 1, 8-11.)

The District Court considered Wilson's arguments and found that she knowingly and voluntarily pleaded guilty. The Court stated:

> The Court independently reviewed the record and the transcript of Defendant's guilty plea hearing in connection with Defendant's first motion to withdraw her guilty plea and found no evidence to support Defendant's assertion that her plea was not voluntary. *See* Order [ECF #37] at 3-4. Defendant's new arguments regarding her lack of confidence in her prior counsel do not persuade the Court to alter its conclusion. To the contrary, the alleged text exchange between Defendant and her counsel that Defendant proffers to the Court reflects that Defendant knowingly and voluntarily pleaded guilty, and later experienced second thoughts. . . .
>
> The record in this case establishes that Defendant appeared at her plea hearing, represented by counsel, and testified under oath that she understood her constitutional rights and wanted to plead guilty. *See* Gov't Resp. App. To First Mot. Withdraw [ECF #36], Ex. B at 6-8. After the magistrate judge advised Defendant that her guilty plea must be purely voluntary, and that she should only plead guilty if she was, in fact, guilty, the government read the essential elements of the offense of theft of government money, in violation of 18 U.S.C. § 641, and Defendant admitted under oath that she committed each of the essential elements. *Id.* at 13-14. Defendant also testified that she read and signed the plea agreement in the case and that all of the terms of her agreement with the government were contained in that document. *See id.* at 14-15. The plea agreement sets forth the maximum prison term and fine that can be imposed upon conviction of the offense charged, and Defendant testified at her

10

> plea hearing that she understood the prison term and fine that could be imposed as a result of her guilty plea. *See* Plea Agr. [ECF #8] at 2; *see also* Gov't Resp. App., Ex. B at 16. These statements made in open court carry a strong presumption of truthfulness. *See United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).
>
> The record reflects that Defendant was represented by counsel throughout this criminal proceeding. During Defendant's plea hearing, Defendant testified under oath that she and her counsel had discussed her case and the plea negotiation and that she was fully satisfied with the advice and representation her counsel provided. Gov't Resp. App., Ex. B at 14. That Defendant now contends that her counsel was unprofessional and that she had doubts about his skill and interest in her case does not justify allowing Defendant to withdraw her guilty plea.

(Crim. ECF No. 50 at 2-3.)

As discussed in the District Court's denial of Wilson's second motion to withdraw her guilty plea, the record shows Wilson voluntarily pleaded guilty. This claim should therefore be denied.

Additionally, Wilson claims her second appointed counsel, Sharita Blacknall, was ineffective when: (1) counsel failed to ask for an emergency continuance so that counsel could review and investigate new evidence in support of Wilson's ineffective assistance of counsel claims; (2) counsel remained silent when the prosecutor informed the Court that the Factual Resume erroneously stated HUD agents read Wilson her *Miranda* rights; and (3) counsel failed to promptly withdraw after entry of the final judgment which delayed the appointment of appellate counsel.

Wilson has failed to show her counsel was ineffective. Counsel included Wilson's new evidence claim in her second motion to withdraw her guilty plea, and she requested a continuance of the sentencing hearing. (Crim. ECF No. 45 at 11.) Wilson also fails to explain how she was prejudiced when counsel "remained silent" when the prosecutor informed the Court that the factual resume incorrectly stated agents read Wilson her *Miranda* rights. (ECF No. 2 at 24.) Finally, although Wilson states counsel's failure to timely withdraw after entry of final judgment delayed the appointment of appellate counsel, Wilson fails to explain how she was prejudiced by any delay. Wilson has thus failed to show she received ineffective assistance of counsel.

B.

Wilson claims her confession to HUD agents was coerced and obtained in violation of her Fifth Amendment rights because she was not given *Miranda* warnings, and the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing certain HUD regulations that she believes exonerate her. The Government argues these claims are procedurally barred because Wilson failed to raise the claims on appeal. When a movant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under § 2255 if the movant can show cause for her failure to raise the claim on direct appeal and actual prejudice, or that she is actually

innocent. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Here, Wilson has failed to allege any reason for her failure to raise these claims on direct appeal. Also, as discussed below, her claim of actual innocence is without merit. These claims are therefore procedurally barred.

These claims are also waived. Once Wilson entered her guilty plea, she waived all non-jurisdictional claims. *See United States v. Cothran*, 302 F.3d 279, 285-86 (5th Cir. 2002) (stating a guilty plea "waives claims of government misconduct during the investigation and improper motives for prosecution."); *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) ("[A] guilty plea precludes the defendant from asserting a *Brady* violation."); *United States v. Bentle*, 533 F. App'x 462, 463 (5th Cir. 2013) (stating guilty plea waives a challenge to the voluntariness of a defendant's confession). These claims should therefore be denied.

### C.

Wilson states she has new evidence of her actual innocence. She claims she discovered provisions in the HUD Handbook stating she was not required to inform HUD that her name was on the checking account that Marshall used to receive the HUD payments or that she made withdrawals from this account.

A claim of actual innocence must be based on reliable evidence not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Where a movant asserts her actual innocence, she must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted her in light of the new evidence presented in her § 2255 motion. *Schlup*, 513 U.S. at 327.

Wilson has failed to meet this high standard. Wilson raised this allegedly "new evidence" in her second motion to withdraw her guilty plea. (*See* Crim. ECF No. 45 at 5-8.) She has therefore not presented any new evidence of her actual innocence. This claim should be denied.

### III. Recommendation

For the foregoing reasons, Wilson's motion to vacate, set-aside, or correct her sentence under § 2255 should be DENIED.

Signed February 21, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).